## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALONZO AMBO**                                           **CIVIL ACTION**

**versus**                                                      **NO. 05-3972**

**N. BURL CAIN, WARDEN**                          **SECTION: "R" (3)**

## REPORT AND RECOMMENDATION

   This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Alonzo Ambo, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On April 20, 2000, he was convicted of distribution of cocaine within one thousand feet of a school in violation of Louisiana law.[2]  On October 13, 2000, he was found to be a third offender and was sentenced as such to a term of life imprisonment, without benefit of parole, probation, or suspension of sentence.[3]  On May 10, 2002, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[4]  He then filed with the Louisiana Supreme Court an application for writ of certiorari and/or review which was denied on December 19, 2002.[5]

On August 7 and October 10, 2003, petitioner filed with the state district court applications for post-conviction relief.[6]  Those applications were denied on October 15 and 16, 2003.[7]  He next filed with the Louisiana First Circuit Court of Appeal applications for supervisory writs which were denied on March 22, 2004, and September 7, 2004.[8]  He then filed with the

---

[2]  State Rec., Vol. III of IV, transcript of April 20, 2000, p. 301; State Rec., Vol. I of IV, minute entry dated April 20, 2000; State Rec., Vol. I of IV, jury verdict form.

[3]  State Rec., Vol. III of IV, transcript of October 13, 2000; State Rec., Vol. I of IV, minute entry dated October 13, 2000.

[4]  State v. Ambo, No. 2001-KA-0756 (La. App. 1st Cir. May 10, 2002) (unpublished); State Rec., Vol. IV of IV.

[5]  State v. Ambo, 833 So.2d 328 (La. 2002) (No. 2002-K-1638); State Rec., Vol. I of IV.

[6]  State Rec., Vol. IV of IV.

[7]  State Rec., Vol. IV of IV, orders dated October 15 and 16, 2003.

[8]  State ex rel. Ambo v. State, No. 2003-KW-2628 (La. App. 1st Cir. Mar. 22, 2004) (unpublished); State ex rel. Ambo v. State, No. 2004-KW-0845 (La. App. 1st Cir. Sept. 7, 2004) (unpublished); State Rec., Vol. IV of IV.

Louisiana Supreme Court an application for supervisory and/or remedial writs which was denied on June 24, 2005.[9]

On July 12, 2005, petitioner filed this federal application for *habeas corpus* relief.[10] In support of his application, petitioner claims:

1.     The evidence was insufficient to support petitioner's conviction due to the unreliability of the identification;

2.     Petitioner was wrongly found to be a third offender;

3.     The trial judge improperly questioned a juror outside of the presence of petitioner and counsel;

4.     The trial judge improperly refused to allow petitioner to introduce exculpatory evidence;

5.     The trial judge improperly allowed the prosecution to call attention to petitioner's failure to testify; and

6.     Petitioner received ineffective assistance of counsel.[11]

.

---

[9] State *ex rel.* Ambo v. State, 904 So.2d 739 (La. 2005) (No. 2004-KH-2597); State Rec., Vol. IV of IV.

[10] Rec. Doc. 1.

[11] Petitioner's overlapping claims have been consolidated and reorganized for ease of analysis.

The state concedes that petitioner's federal application is timely and that he exhausted his state court remedies.[12]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

---

[12] Rec. Doc. 8, pp. 2 and 4-5.

stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

<u>Facts</u>

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

On June 30, 1998, Detective John Hoover was working undercover in connection with an ongoing investigation of drug trafficking in Slidell, Louisiana. On this date, sometime between 10 and 11 o'clock p.m., he participated in a controlled narcotics transaction with a man he later identified as defendant. Hoover testified that the exchange occurred at the passenger's side window in a car driven by defendant. According to Hoover, defendant identified himself as Alonzo. A passenger in the car identified himself as "Boogie." After the exchange, Hoover went back to his car and reported what had occurred into a "Kell" device that had been installed on his car so that officers who were assisting in the investigation could monitor the exchange. Detective Simon, who was working with Hoover, indicated that he heard Hoover say that the driver identified himself as Alonzo and that Hoover also reported the license number of the car. Although Simon was not in a position to see and identify the driver, he recognized the car as one he had seen being driven by Alonzo Ambo. Within an hour of the drug transaction, defendant's driver's license photograph was pulled and shown to Hoover who positively identified defendant as the person who sold him drugs that night.[13]

---

[13] <u>State v. Ambo</u>, No. 2001-KA-0756, at p. 2 (La. App. 1st Cir. May 10, 2002) (unpublished); State Rec., Vol. IV of IV.

<u>Sufficiency of the Evidence</u>

Petitioner claims that there was insufficient evidence to support his conviction due to the unreliability of his identification.  This Court, like the state courts before it, rejects that contention.

The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

<u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Jackson</u>, 443 U.S. at 319).  This Court may find the evidence sufficient even though the facts additionally support one or more reasonable hypotheses which are consistent with petitioner's claim of innocence.  <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1316 (5th Cir. 1992); <u>see also</u> <u>Gibson v. Collins</u>, 947 F.2d 780, 783 (5th Cir. 1991).  "The <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  <u>Santellan</u>, 271 F.3d at 193 (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence argument presents a mixed question of law and fact.  <u>Taylor v. Day</u>, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), <u>aff'd</u>, 213 F.3d 639 (5th Cir. 2000).  Therefore, this Court must defer to the state court unless its decision

regarding the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

When petitioner first asserted this claim in his post-conviction proceedings, the trial court rejected the claim, holding:

> The issues raised by the defendant in his application for PCR regarding the identification were considered by the jury at trial.  The jury found that the identification had been proved beyond a reasonable doubt and was reliable.  Thus the Court finds the claims of the applicant regarding the identification to be without merit.[14]

At trial, petitioner was identified by an eyewitness, i.e.  Detective John Hoover, the undercover officer to whom petitioner sold the cocaine.[15]  Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction.  See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983);  State v. Davies, 813 So.2d 1262, 1267 (La. App. 2nd Cir. 2002);  State v. Cowart, 815 So.2d 275, 283 (La. App. 5th Cir. 2002);  State v. Coleman, 831 So.2d 375 (La. App. 4th Cir. 2002).  Moreover, that testimony was not the only evidence which linked petitioner to the crime; rather, the evidence showed that the perpetrator of the crime identified himself as "Alonzo"[16] and the drug buy took place from an automobile previously linked to petitioner and owned by his girlfriend.[17]

---

[14]  State Rec., Vol. IV of IV, order dated October 16, 2003.

[15]  State Rec., Vol. II of IV, transcript of April 20, 2000, p. 59.

[16]  State Rec., Vol. II of IV, transcript of April 20, 2000, p. 59.

[17]  State Rec., Vol. II of IV, transcript of April 20, 2000, pp. 130-31 and 141.

Further, petitioner's challenge to the validity of the identification also has no merit.

The United States Fifth Circuit Court of Appeals has noted:

> [T]he admissibility of identification evidence is governed by a two-step analysis. Initially, a determination must be made as to whether the identification procedure was impermissibly suggestive. Next, the court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.

Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990) (footnote omitted). A court need not address the second step if the first step is not met: "If the identification procedure is not impermissibly suggestive, the inquiry ends." Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997). However, if the inquiry proceeds to the second step, the Fifth Circuit has offered the following guidance:

> In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court indicated that "reliability is the linchpin" when examining the totality of the circumstances to "determin[e] the admissibility of identification testimony." Id. at 114, 97 S.Ct. at 2253. Even an impermissibly suggestive identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability. The Supreme Court has set forth several factors to be considered when reviewing the reliability of a pre-trial identification. These factors include
>
> > (1) the opportunity of the witness to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, (5) the elapsed time between the crime and the identification, and (6) the corrupting influence of the suggestive identification itself.

Herrera, 904 F.2d at 947.

In the instant case, Hoover was shown a single photograph of petitioner at the time of his identification. Even if the Court assumes that the use of a single photograph was

impermissibly suggestive,[18] the identification nevertheless still possesses sufficient aspects of reliability.  First, Hoover had an excellent opportunity to view the perpetrator, in that he was viewed for a number of minutes at close range within an automobile's interior in a well-lit area.[19]  Second, Hoover was not a "casual or passing observer," but rather a trained police officer, who could be expected to "pay scrupulous attention to detail" based on the fact that he knew he would later be called upon to identify the perpetrator.  See Manson, 432 U.S. at 115.  Moreover, Hoover was "one hundred percent convinced" of the accuracy of the identification[20] and the identification was initially made within an hour of the drug buy.[21]  Under these facts, the identification possessed sufficient aspects of reliability, and the jurors could have rationally relied on that identification to support their finding that petitioner was guilty of the charge against him.

For all of the foregoing reasons, this Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence and the validity of his identification.

---

[18]   See United States v. Sanchez, 988 F.2d 1384, 1389 (5th Cir. 1993).

[19]   State Rec., Vol. II of IV, transcript of April 20, 2000, pp. 60-61.

[20]   State Rec., Vol. II of IV, transcript of April 20, 2000, p. 59; see also State Rec., Vol. II of IV, transcript of April 20, 2000, pp. 73-74 and 77-78.

[21]   State Rec., Vol. II of IV, transcript of April 20, 2000, pp. 73-74.

<u>Habitual Offender Adjudication</u>

Petitioner asserts various claims regarding the state's evidence in the habitual offender proceedings.  Although the state fails to expressly argue in its response that those claims are procedurally barred, a federal *habeas* court has the discretion to raise a procedural default *sua sponte*.  <u>Prieto v. Quarterman</u>, 456 F.3d 511, 518 (5th Cir. 2006); <u>Magouirk v. Phillips</u>, 144 F.3d 348, 357-58 (5th Cir. 1998).  In the instant case, it is appropriate for the Court to raise that defense.  In its response, the state does not expressly waive the procedural default; rather, counsel's failure to raise the procedural default in her uniformly deficient response was clearly inadvertent rather than a purposeful decision made on behalf of the state to forgo the defense.  Moreover, because petitioner will have notice of the application of the bar by virtue of this Report and Recommendation and the opportunity to respond in an objection to the United States District Court Judge, petitioner is not prejudiced by the assertion of the defense.  <u>See</u> <u>Prieto</u>, 456 F.3d at 519; <u>Magouirk v. Phillips</u>, 144 F.3d at 359.  Accordingly, *petitioner is hereby specifically instructed that this Report and Recommendation is notice to him that the undersigned is sua sponte raising the procedural bar and that petitioner must submit any evidence or argument concerning that issue as part of any objections he may file to this report.*

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state

> courts, and applied to the majority of similar claims.  This rule
> applies to state court judgments on both substantive and procedural
> grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

       In the last reasoned state court judgment addressing petitioner's claims regarding the

habitual offender proceedings, the Louisiana First Circuit Court of Appeal rejected the claims,

holding:

> The trial court did not err in denying relator's application for post-
> conviction relief.  An attack on predicate convictions supporting a
> habitual offender adjudication should be raised on appeal.  A defect
> in habitual offender proceedings does not constitute grounds for post-
> conviction relief under La. Code Crim. P. art. 930.3.  See **State ex
> rel. Melinie v. State**, 93-1380 (La. 1/12/96), 665 So.2d 1172.[22]

The Louisiana Supreme Court then rejected the related writ application without assigning reasons.[23]

       As noted, the state court expressly cited La.C.Cr.P. art. 930.3, which sets forth the

grounds on which post-conviction relief may be sought, and the Melinie decision, which held that

claims involving sentencing errors may not be asserted in post-conviction proceedings.[24]  Courts

---

[22] State *ex rel.* Ambo v. State, No. 2004-KW-0845 (La. App. 1st Cir. Sept. 7, 2004) (unpublished); State Rec., Vol. IV of IV.

[23] State *ex rel.* Ambo v. State, 904 So.2d 739 (La. 2005) (No. 2004-KH-2597); State Rec., Vol. IV of IV.  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground."  Finley, 243 F.3d at 218.

[24] To the extent that petitioner is arguing that the state courts misapplied Melinie because its holding was limited to claims regarding the *excessiveness* of a sentence, rather than all sentencing errors, he is clearly wrong.  In Melinie itself, the Louisiana Supreme Court specifically stated that "La. Code Crim. Proc. art. 930.3, which sets out the exclusive grounds for granting post-conviction relief, provides no basis for review of claims of excessiveness *or other sentencing error* post-conviction."  Melinie, 665 So.2d at 1172 (emphasis added).

have long held that article 930.3 and the <u>Melinie</u> decision constitute independent and adequate

grounds to support the application of a procedural bar.  <u>See, e.g.</u>, <u>Hull v. Stalder</u>, No. 99-31199,

2000 WL 1598016 (5th Cir. Sept. 28, 2000); <u>Madina v. Cain</u>, Civ. Action No. 05-2126, 2006 WL

2726506, at *3 (E.D. La. Sept. 20, 2006); <u>Johnson v. Andrews</u>, Civ. Action No. 05-0413, 2006 WL

2294864, at *4 (E.D. La. Aug. 4, 2006); <u>Williams v. Miller</u>, Civ. Action No. 05-0086, 2006 WL

2087867, at *9 (E.D. La. July 24, 2006); <u>Dedmond v. Cain</u>, Civ. Action No. 03-3375, 2005 WL

1578086, at *8 (E.D. La. June 30, 2005); <u>Leonard v. Hubert</u>, Civ. Action No. 00-0511, 2001 WL

333123, at *7 (E.D. La. Apr. 4, 2001).[25]

"When the state court has relied on an independent and adequate state procedural

rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice

or that a failure to address the claim will result in a fundamental miscarriage of justice." <u>Hughes</u>

<u>v. Johnson</u>, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the

petitioner, something that cannot fairly be attributed to him." <u>Johnson v. Puckett</u>, 176 F.3d 809, 816

(5th Cir. 1999) (quotation marks omitted) (emphasis in original).  Objective factors that can

constitute cause include interference by officials that makes compliance with the state procedural

rule impracticable, a showing that the factual or legal basis for the claim was not reasonably

---

[25]     Moreover, by its reference to the fact that such the claims were not raised on appeal, it is
evident that the state court is also implicitly invoking La.C.Cr.P. art. 930.4(C), which provides:  "If
the application alleges a claim which the petitioner raised in the trial court and inexcusably failed
to pursue on appeal, the court may deny relief."  Article 930.4(C) is also considered an independent
and adequate state ground to support the application of a procedural bar.  <u>Bell v. Cain</u>, No. 02-259,
2002 WL 31002831, at *4 (E.D. La. Aug. 29, 2002), *certificate of appealability denied*, No. 02-
30947 (5th Cir. July 30, 2003).

available to counsel, and ineffective assistance of counsel.  Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).  In his federal application, petitioner has not established cause for the procedural default.[26]  "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Without a showing of cause and prejudice, a petitioner's defaulted claims are procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice.  The fundamental miscarriage of justice exception is limited to claims of actual innocence.  See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998).  However, it is unclear to what extent, if any, the "actual innocence" exception is available when the defaulted claims relate merely to an alleged sentencing error in a noncapital proceeding.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced as habitual or multiple offenders.  Id. at 265-66.  However, the Haley court held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence"

---

[26] To the extent that petitioner is implicitly arguing that counsel's failure to challenge the habitual offender adjudication on appeal constitutes cause, the Court rejects that argument.  For the reasons set forth later in this opinion, petitioner was failed to establish that counsel was ineffective in that respect.  A meritless ineffective assistance of counsel claim cannot serve as cause for a procedural default.  Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No. 91-55842, 1993 WL 425372, at *3 n.2 (9th Cir. Oct. 19, 1993); Bridges v. United States, No. 04 Civ. 2715, 2005 WL 1798084, at *2 (S.D.N.Y. Aug. 1, 2005); Davie v. Mitchell, 324 F. Supp. 2d 862, 872 (N.D. Ohio 2004); McLaughlin v. Carroll, 270 F. Supp. 2d 490, 516 (D. Del. 2003).

requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received." Id. at 264. The Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit. Dretke v. Haley, 541 U.S. 386 (2004). In so doing, the Supreme Court declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors. Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is available to defaulted claims regarding noncapital sentencing errors, petitioner has failed to establish that he was legally ineligible for the habitual offender sentence he received.[27]  Thus, he has not demonstrated that any miscarriage of justice will result from application of the procedural bar.

Accordingly, petitioner's claims challenging the habitual offender proceedings are procedurally barred in this federal proceeding.

Questioning of Juror

Petitioner claims that the trial judge improperly questioned a juror outside of the presence of petitioner and counsel.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> In this assignment of error, defendant contends that the trial court's communication with a juror who had been selected on the first day of trial constituted reversible error.  On the second morning of trial, the trial judge informed counsel that prior to the beginning of court that morning one of the jurors approached him and told him that she had realized that defendant's trial counsel represented her brother

---

[27]  Although he opines that he was wrongly found to be a third offender, he has never produced any evidence whatsoever in support of that bald allegation.

in a DWI case.  The court indicated that it had asked the juror if that would affect her ability to be fair and impartial and that she had said no.  The state then indicated that had it known this information during voir dire it would have exercised a peremptory challenge as to that juror.  The trial court offered to have the juror brought into court, to which defense counsel stated that he thought that was unnecessary in light of the juror's response to the trial court that she could be fair.

The prosecutor argued that in light of the new information, it would prefer to exercise a peremptory challenge of that juror.  Because the jury had not yet been sworn, the trial court allowed the challenge.

Defendant cites **State v. Wicken**, 96-345 (La. App. 5th Cir. 10/1/96), 683 So.2d 805, for the proposition that the trial court's actions in this case constitute reversible error.  However the facts of the instant case are distinguishable from **Wicken** in several respects.  In that case, after the jury was picked but before opening statements, defense counsel asked the trial court to remove a juror who had been overheard stating that "if she lost a hundred dollars today from her employment, there would be no fair trial."  **Wicken**, 96-345 at p. 3, 683 So.2d at 805.  The trial court denied defendant's request to remove the juror stating that the court had already talked to the juror and felt that she had been sufficiently calmed down and would make a good juror.  The court in that case held that the trial court committed reversible error in conversing with the juror to determine whether she would make a fair and impartial juror.

In the instant case, the juror approached the trial court in the morning, prior to the beginning of court, to give it the information that her brother had been represented by defendant's attorney.  Although the trial court asked her if that would affect her ability to be fair and impartial, it appears from the record that, unlike **Wicken**, the trial court's contact with the juror was relatively brief and was initiated by the juror, not the judge.  It is further noted that the trial court immediately brought the matter to the attention of counsel and offered them the opportunity to question the juror, which defense counsel declined.

Under the circumstances presented here, we find no reversible error in the trial court's actions.  Therefore, this assignment is without merit.[28]

---

[28] <u>State v. Ambo</u>, No. 2001-KA-0756, at pp. 6-7; State Rec., Vol. IV of IV.

This Court notes that, contrary to petitioner's implicit assumption, "there is no blanket prohibition against the *ex parte* examination of jurors by a trial judge." United States v. Brantley, 68 F.3d 1283, 1291 (11th Cir. 1995). Moreover, even in those instances where such actions would constitute error, that error "may be harmless if the court takes sufficient precautions to ensure against prejudice to the [defendant's] interests." Id.; see also Rushen v. Spain, 464 U.S. 114, 119 (1983).

In the instant case, even if the trial judge erred, which has by no means been established, any error was ultimately harmless. When the information was made known to the parties, the prosecution used a *peremptory* challenge to excuse the juror, an outcome defense counsel could not have prevented even if the information had been obtained during voir dire, rather than through the *ex parte* communication. Because the juror would have been excused by the prosecution in either event, petitioner clearly cannot show that any prejudice resulted from the *ex parte* communication.[29] Accordingly, *habeas* relief is not warranted.

### Exclusion of Evidence

Petitioner claims that the trial judge improperly refused to allow the introduction of exculpatory evidence. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

---

[29] Moreover, the Court notes that defense counsel was quickly notified of the *ex parte* communication and given the option of questioning the juror regarding the matter. In that defense counsel expressly declined that corrective measure, any error in this regard would be "invited error." Normally, a petitioner is precluded from seeking *habeas* relief based on an error he invites. See, e.g., Fields v. Bagley, 275 F.3d 478, 486 (6th Cir. 2001); Parker v. Champion, 148 F.3d 1219, 1222 (10th Cir. 1998); Wilson v. Lindler, 8 F.3d 173, 175 (4th Cir. 1993) (en banc).

In this assignment of error, defendant contends that the trial court erred in sustaining the state's hearsay objection to a document defendant attempted to introduce in connection with his alibi defense.

The instant offense was alleged to have been committed on June 30, 1998, when defendant sold drugs to an undercover narcotics officer. Defendant offered an alibi defense. Defendant presented testimony of friends and family that on the night in question, he was attending a party at a nightclub called the Sand Pit.

Defendant attempted to introduce a purported invitation to an anniversary party for the club through his uncle, Isaiah Ambo, Sr., who said he had received the invitation in the mail. The state objected to introduction of the document on the basis of hearsay, stating that it should not be allowed unless defendant could bring in the person who prepared the document to authenticate it. The trial court agreed, stating "Somebody could have done this last night on a computer. ... You should have had the guy who did this come and testify."

The invitation was being offered for its truth, i.e., that there had been an anniversary party at the Sand Pit club on the night of June 30, 1998. Therefore, the said document constituted hearsay evidence. La. C.E. art. 801(C). While hearsay should generally be excluded, if it is reliable and trustworthy and its exclusion would interfere with the defendant's constitutional right to present a defense, it should be admitted. **State v. Gremillion**, 542 So.2d 1074, 1078 (La. 1989). In the instant case, the trial judge pointed out that the document defendant was attempting to introduce was not reliable and trustworthy, as it appeared to be something that could easily have been generated by anyone on a computer. The trial court indicated that in order for the document to be admissible, someone from the Sand Pit needed to be present in court to verify that the document was produced by the club and sent to its patrons. On cross-examination of defendant's uncle, the prosecutor questioned whether the owner was a friend of his. The uncle responded in the affirmative. Therefore, it is apparent that defendant could have easily had the owner of the club come in to testify to the authenticity of the document in question.

It is further noted that on direct examination, Ambo was allowed to testify that he had received the invitation, that it was dated June 30, 1998, and that he had brought the invitation with him to court.

> Under the circumstances presented here, the trial court did not err in excluding the evidence and this assignment of error is without merit.[30]

The United States Fifth Circuit Court of Appeals has held:

> In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law. However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness.

Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, *habeas* relief is unwarranted unless the evidentiary errors "played a crucial, critical, and highly significant role in the trial." Id. To the extent that petitioner is claiming that the alleged evidentiary error was so extreme that it rendered his trial fundamentally unfair, that claim has no merit for the following reasons.

First, the Court notes that petitioner has failed to demonstrate that the state court's ruling was erroneous. The state courts ruled that the invitation would have violated the rule against hearsay evidence, and that ruling was clearly correct.

Second, in any event, it is evident that the exclusion of the invitation did not play a crucial, critical, and highly significant role in petitioner's conviction. Extensive, unrebutted testimonial evidence regarding the existence of the party was admitted at trial, and the introduction of the actual invitation would have been cumulative. Moreover, the issue in dispute was not whether such a party was held, but rather whether petitioner was actually at the party at the time the instant crime was committed. That fact would in no way have been proven by the introduction of the invitation. That consideration, as well as the significant evidence of petitioner's guilt, leads

---

[30] State v. Ambo, No. 2001-KA-0756, at pp. 7-8; State Rec., Vol. IV of IV.

inexorably to the conclusion that the trial court's evidentiary ruling played no part in petitioner's

conviction.  Accordingly, petitioner's claim should be rejected.

<u>Prosecution's Reference to Petitioner's Failure to Testify</u>

Petitioner claims that the trial judge improperly allowed the prosecution to call

attention to petitioner's failure to testify.  On direct appeal, the Louisiana First Circuit Court of

Appeal rejected that claim, holding:

> In this assignment of error, defendant contends that the trial court erred in denying his motion for mistrial based on the prosecutor intentionally calling the jury's attention to defendant's failure to testify.
>
> During cross-examination of Detective Hoover, defendant attempted to point out inconsistencies in his identification of defendant as the person from whom he had bought drugs on the night in question.  At one point, defense counsel questioned Detective Hoover about his testimony at a hearing on defendant's Motion to Suppress, in which Detective Hoover indicated his belief that the person who sold him drugs that night did not have gold teeth.  Detective Hoover acknowledged this statement.  During cross-examination of Detective Hoover, defense counsel asked defendant to stand in front of the jury and smile, apparently to demonstrate that defendant had gold teeth.  The purpose of this line of questioning and demonstration was obviously to show that Detective Hoover was mistaken when he identified defendant as the person with whom he had engaged in the drug transaction in question.
>
> On redirect, the prosecutor then elicited testimony from Hoover about how defendant spoke to him that evening.  Detective Hoover indicated that defendant was talking in a low tone of voice and not opening his mouth very far, thus explaining why he might not have noticed the gold teeth.
>
> The defense presented, by way of an alibi defense, several witnesses who testified that defendant was attending a party with them on the evening in question.  One of the witnesses identified pictures she had taken during the relevant time period that showed defendant smiling.  In the picture it can clearly be seen that the defendant's front teeth are capped with gold.  After several defense

witnesses testified that defendant had gold teeth for a number of years, the following took place:

BY [DEFENSE COUNSEL]:
      Your Honor, at this time we would call Alonzo Ambo for purposes discussed at the bench.

BY [PROSECUTOR]:
      I didn't understand.  Who are you calling?

BY [DEFENSE COUNSEL]:
      Alonzo Ambo.  I'm calling him pursuant to discussion [sic] that we had.

BY THE COURT:
      Demonstration Purposes.

BY [PROSECUTOR]:
      Your Honor, can we approach the bench.

At this point, a bench conference was apparently held, but the record does not contain a transcription of that conference.  After the bench conference, defendant, at the direction of defense counsel, stood before the jury and read at length an advertisement for Westlaw.  At one point during this recitation, defense counsel directed defendant to get close to the jury and read in a loud voice. Afterwards, he told defendant to turn to the jurors and recite his ABC's.  Defense counsel then thanked defendant.  The prosecutor then asked the court whether he was permitted to ask questions and was told, "I don't believe.  This is strictly for demonstration."  The prosecutor asked the court to explain that to the jury, at which point the court said:

      Right.  Mr. Ambo was not here as a witness.  This was strictly demonstration which was requested by his attorney.  So since he's not a witness, Mr. Dearing cannot ask him any questions.

After this exchange, when the jury was excused for a break, defense counsel asked for a mistrial based on the prosecutor's question about whether he could ask questions of the witness, claiming that it was a comment on defendant's failure to testify.  The

- 20 -

court said, "I don't think he made a comment on him not testifying. I think I explained to the jury what was going on."  The prosecutor indicated that the reason he wanted the court to instruct the jury regarding the demonstration was so that the jury was not left with the impression that the prosecutor had chosen not ask defendant any questions.  The trial court did not interpret the prosecutor's remarks as a comment on defendant's failure to testify and denied the motion for a mistrial.

Louisiana Code of Criminal Procedure Article 770(3) provides that the trial court "shall" declare a mistrial when the prosecutor "refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense... ."  The prohibition against such prosecutorial comments safeguards the defendant from unfavorable inferences that might otherwise be drawn from his silence.  **State v. Fullilove**, 389 So.2d 1282, 1283 (La. 1980).  The rule helps implement a defendant's Fifth Amendment right against self-incrimination and is constitutionally required.  <u>See</u> **Griffin v. California**, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and "it is irrelevant whether the prosecutor intended the jury to draw unfavorable inferences from defendant's silence." **Fullilove**, 389 So.2d at 1284.  Where the reference to the defendant's failure to take the stand is not direct, this court will inquire into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from general statements that the prosecutor's case is unrebutted (which are permissible).  **State v. Johnson**, 541 So.2d 818, 822 (La. 1989).

The instant case presents a highly unusual situation in which the defendant, who had already demonstrated that he had gold teeth, was again permitted to stand before the jury and read a fairly extensive amount of material, and then recite his ABC's for the apparent purpose of showing that those teeth were visible when he spoke.  Contrary to defendant's argument, it was clear that the prosecutor was initially confused when defense counsel indicated that it was calling the defendant for purposes discussed at the bench because he asked to approach the bench.  Since the bench conference was not transcribed, the prosecutor's understanding of the manner in which demonstration would proceed cannot be determined.  The trial court made clear that it thought the prosecutor's question was asked

merely for purposes of clarifying for the jury what was happening. The court gave this interpretation prior to hearing the prosecutor's explanation. Given the fact that defendant had already physically demonstrated that he had gold teeth when he was asked by defense counsel to smile for the jury, it is possible that some of the jurors might have been confused by his being again called during the defense's presentation of evidence. In any case, it is clear that the trial court did not interpret the remark as a comment on defendant's failure to take the stand. Further, even if the prosecutor's questions could be interpreted as referring to defendant's failure to take the stand, any such reference was indirect. As such, in light of the fact that the trial court believed the remarks were made for purposes of clarifying for the jury what had occurred and not calling attention to defendant's failure to testify, a mistrial was not warranted. In light of the foregoing, the trial court's ruling was proper, and this assignment of error is without merit.[31]

Petitioner's claim is based on the Fifth Amendment's Self-Incrimination Clause, which has been made applicable to the states by the Fourteenth Amendment. See Griffin v. California, 380 U.S. 609, 611 (1965). Regarding such claims, the United States Fifth Circuit Court of Appeals has noted:

The Fifth Amendment prohibits a prosecutor from commenting on a defendant's failure to testify if the prosecutor's manifest intent in making the remark must have been to comment on the defendant's silence, or the character of the remark must have been such that the jury would naturally and necessarily construe it as a comment on defendant's silence. The prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark. As for whether a jury would naturally and necessarily construe the remark as a comment on the defendant's failure to testify, the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so. Additionally, challenged comments are evaluated in the context of the trial within which they are made.

---

[31] State v. Ambo, No. 2001-KA-0756, at pp. 3-6; State Rec., Vol. IV of IV.

Cotton v. Cockrell, 343 F.3d 746, 751 (5th Cir. 2003) (internal citations and quotation marks omitted).  Moreover, in any event, a violation of this protection will not warrant *habeas* relief if the error was ultimately harmless, as where the comment was "an isolated comment in a sea of [incriminating] evidence."  Id. at 752.

        The prosecutor's comments in the instant case clearly fall short of warranting such relief for several reasons.  First, no prohibited intent was evident in that the prosecutor offered and the state court found another plausible explanation for the comment.  Second, the comment was hardly of a nature that would lead the jury to *necessarily* construe it as a comment of petitioner's failure to testify, especially when viewed within the context of the demonstration during which the comment was made.  Third, even if a violation were found to exist, the violation would be clearly harmless in light of the nature of the comment and the substantial evidence of petitioner's guilt.

        For the foregoing reasons, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects that claim.

Ineffective Assistance of Counsel

        Petitioner claims that his counsel was ineffective.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793. In order to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.

Briesno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briesno, 274 F.3d at 210.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner claims that his counsel was ineffective in several respects.  The Court will address each of petitioner's contentions.

First, petitioner claims that his trial counsel refused to allow him to testify in his own defense at trial and that his counsel's action constituted ineffective assistance of counsel.  When petitioner presented this claim during his post-conviction proceedings, the state district court denied the claim, holding:

> The defendant alleges that he was denied his right to testify in his own behalf.  The defendant had full opportunity at the trial to testify and did not do so.  As noted in the Order signed on 10/15/2003, the defense may have had reasons pertaining to trial strategy for not having the defendant testify.  The Court did not deprive the defendant of his right to testify.  In his application, the defendant alludes to a discussion with his attorney about his criminal history as a reason for the defendant not to testify.  The Court does not find that this claim has merit.[32]

The Louisiana First Circuit Court of Appeal found no error in that ruling, and the Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  Rock v. Arkansas, 483 U.S. 44, 49 (1987).  However, petitioner has offered no proof whatsoever that counsel in fact prevented him from testifying.

Petitioner does not allege and the record does not suggest that petitioner ever made known to the trial court that his counsel was refusing to allow him to testify despite his stated desire to do so.  Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue.  See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003).  Nevertheless, the Court cannot ignore the fact that petitioner has never presented any evidence whatsoever either to the state courts or to this Court to corroborate his allegations.  Without more, petitioner's bare allegations are insufficient to trigger either the granting of relief or further fact-finding by this Court.

---

[32]  State Rec., Vol. IV of IV, order dated October 16, 2003.

As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen.  Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify.  Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Turcios v. Dretke, No. Civ. A. H-97-0515, 2005 WL 3263918 (S.D. Tex. Nov. 29, 2005).  This Court finds that, in light of the complete lack of evidentiary support for petitioner's contention, petitioner has failed to meet his burden to establish that he is entitled to relief.[33]

   To the extent that petitioner is alleging that his counsel was ineffective in failing to have him testify, the Court likewise rejects that claim.   A decision whether to put a criminal

---

[33]  To the extent that petitioner is arguing that counsel was ineffective in failing to inform him that he had the right to testify, that claim is likewise meritless.  As an initial matter, the Court notes that this was hardly petitioner's first trip to the courthouse.  The Court finds suspect any contention that petitioner, a career criminal, was unaware of his right to testify.  Nevertheless, in any event, petitioner has never presented any evidence whatsoever in support of his bald allegation that counsel failed to inform him of his right to testify.  For that reason alone, the claim should be rejected.

defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002).  That is especially true in the instant case.  As both petitioner and the state court indicate, counsel may well have been hesitant to have petitioner testify in this case, which involved a cocaine distribution charge, because his testimony would undoubtedly lead to the revelation to the jury of petitioner's criminal history, which included, *inter alia*, a prior cocaine distribution conviction.  This Court cannot say that counsel performed deficiently in choosing to avoid that revelation.

Second, petitioner claims that trial counsel was ineffective in failing to produce "affirmative evidence" during the habitual offender proceedings to support the contention that the predicate conviction from Mississippi was invalid.  This claim merits little consideration.  As noted previously, petitioner bears the burden of proof with respect to his ineffective assistance of counsel claim.  To prevail on this particular claim, petitioner can establish deficient performance and prejudice only by showing that the Mississippi conviction was in fact invalid.  Because he has produced no evidence whatsoever in support of his bald allegation that the conviction was invalid, this claim necessarily fails.

Third, petitioner claims that his counsel was similarly ineffective in failing to challenge the habitual offender adjudication on appeal.  Again, however, because he has not established that the habitual offender adjudication was in fact erroneous, he has not shown the requisite deficient performance and resulting prejudice to prove his ineffective assistance of counsel claim.

- 28 -

Petitioner has failed to demonstrate that the state court's decisions regarding his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claims.

### **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Alonzo Ambo be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of January, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**