UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ALONZO AMBO                              CIVIL ACTION

VERSUS                                   NO: 05-3972

BURL CAIN, WARDEN                        SECTION: "R"(3)


**ORDER AND REASONS**

Before the Court are petitioner Alonzo Ambo's objections to
the magistrate judge's Report and Recommendations denying his
application for a writ of habeas corpus.  For the following
reasons, the Court accepts the magistrate judge's Report and
Recommendation and DENIES Ambo's application for habeas relief.


**I.   PROCEDURAL HISTORY**

Petitioner, Alonzo Ambo, is a prisoner at the Louisiana
State Penitentiary in Angola, Louisiana.  On April 20, 2000, Ambo
was convicted of distribution of cocaine within one thousand feet
of a school, in violation of La. Rev. Stat. §§ 40:967(A)(1) and
40:981.3.[1]  On October 13, 2000, he was found to be a third time

_____

[1] State Rec., Vol. III of IV, transcript of April 21, 2000,
p. 301; State Rec., Vol. I of IV, minute entry dated April 20,

offender under La. Rev. Stat. § 15:529.1 and accordingly he was sentenced to a term of life imprisonment, without benefit of parole, probation, or suspension of sentence.[2]  On May 10, 2002, the Louisiana First Circuit Court of Appeal affirmed Ambo's underlying conviction, habitual offender adjudication, and sentence.[3]  He then filed with the Louisiana Supreme Court an application for writ of certiorari and/or review, which was denied on December 19, 2002.[4]

On August 7, 2003 and October 10, 2003, Ambo filed applications for post-conviction relief, which the state district court denied on October 15, 2003 and October 16, 2003, respectively.[5]  Ambo then filed with the Louisiana First Circuit Court of Appeal applications for supervisory writs, which were denied on March 22, 2004, and September 7, 2004.  He next filed

---

2000; State Rec., Vol. I of IV, jury verdict form; State Rec., Vol. I of IV, Multiple Offender Bill of Information.

[2] State Rec., Vol. III of IV, transcript of October 13, 2000; State Rec., Vol. I of IV, minute entry dated October 13, 2000.

[3] *State v. Ambo*, No. 2001-KA-0756 (La. Ct. App. May 10, 2002) (unpublished); State Rec., Vol. IV of IV.

[4] *State v. Ambo,* No. 833 So. 2d 328 (La. 2002) (No. 2002-K-1638); State Rec., Vol. I of IV.

[5] State Rec., Vol. IV of IV, orders dated October 15 and 16, 2003.

with the Louisiana Supreme Court an application for supervisory and/or remedial writs, which was denied on June 24, 2005.[6]

On July 12, 2005, Ambo filed this federal application for habeas corpus relief.[7]  The state concedes that petitioner's application is timely and that he has exhausted his state court remedies.[8]  In support of his application, petitioner claims: (1) the evidence was insufficient; (2) petitioner's habitual offender adjudication was improper; (3) the trial judge impermissibly questioned a juror outside of the presence of petitioner and counsel; (4) the trial judge improperly excluded evidence; (5) the trial judge improperly permitted the prosecutor's reference to the defendant's failure to testify; and (6) ineffective assistance of counsel.  The magistrate judge issued his Report and Recommendation on January 9, 2007, wherein the magistrate judge recommended that petitioner's claims be dismissed with prejudice.  Presently before the Court are petitioner's objections to the magistrate judge's Report and Recommendation.


## II.  FACTUAL BACKGROUND

---

[6] *State ex rel. Ambo v. State*, 904 So. 2d 739 (La. 2005) (No. 2004-KH-2597); State Rec., Vol. IV of IV.

[7] Rec. Doc. 1.

[8] Rec. Doc. 8, at 2, 4-5.

3

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> On June 30, 1998, Detective John Hoover was working undercover in connection with an ongoing investigation of drug trafficking in Slidell, Louisiana.  On this date, sometime between 10 and 11 o'clock p.m., he participated in a controlled narcotics transaction with a man he later identified as defendant. Hoover testified that the exchange occurred at the passenger's side window in a car driven by defendant.  According to Hoover, defendant identified himself as Alonzo.  A passenger in the car identified himself as "Boogie."  After the exchange, Hoover went back to his car and reported what had occurred into a "Kell" device that had been installed on his car so that officers who were assisting in the investigation could monitor the exchange. Detective Simon, who was working with Hoover, indicated that he heard Hoover say that the driver identified himself as Alonzo and that Hoover also reported the license number of the car.  Although Simon was not in a position to see and identify the driver, he recognized the car as one he had seen being driven by Alonzo Ambo.  Within an hour of the drug transaction, defendant's driver's license photograph was pulled and shown to Detective Hoover who positively identified defendant as the person who sold him drugs that night.

*State v. Ambo*, No. 2001-KA-0756, at 2 (La. Ct. App. May 10, 2002) (unpublished).


## III. DISCUSSION

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 prohibits a federal habeas court from granting a state prisoner's

application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court unless the state court adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision involves an unreasonable application of federal law if the state court unreasonably applies the correct governing legal principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 412; *Hill*, 210 F.3d at 485. The state court's findings of fact are entitled to a presumption of correctness, and they can be rebutted only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**B.   Analysis**

     *1.   Sufficiency of the Evidence*

Petitioner claims his identification was unreliable and thus the evidence was insufficient to support his conviction.  In evaluating a petitioner's challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted).  In making this determination, the Court must resolve all credibility issues in favor of the prosecution.  *See Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citing *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)).  When, as in this case, a state appellate court has reviewed the sufficiency of the evidence, that court's opinion is entitled to great weight.  *See Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) (citing *Jackson*, 443 U.S. at 310, n.15); *see also Duff-Smith v. Collins*, 973 F.2d 1175, 1184 (5th Cir. 1992).  Indeed, as indicated above, the AEDPA presumes the correctness of state court findings of fact, and places a "clear and convincing" burden on the petitioner who attempts to rebut that presumption.  *See* 28 U.S.C. § 2254(e)(1).

Here, petitioner asserts his identification was insufficient.  However, Detective John Hoover, an eye witness, positively identified him as the individual who sold him cocaine.

6

He further stated he was 100 percent sure of his identification of petitioner.[9]  Generally, the testimony of a single, uncorroborated eyewitness is sufficient to support a conviction. *United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983) (citing *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979), *cert. denied*, 441 U.S. 951 (1979)).

According to the Fifth Circuit:

> [T]he admissibility of identification evidence is governed by a two step analysis.  Initially, a determination must be made as to whether the identification procedure was impermissibly suggestive.  Next, the court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification."

*Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990).  However, "[i]f the identification process is not impermissibly suggestive, the inquiry ends."  *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997).  According to the Fifth Circuit, if the inquiry proceeds to the second part, "reliability is the linchpin" when examining the totality of the circumstances to "determine the admissibility of identification testimony."  *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977).  The Supreme Court has set forth several factors to be considered when reviewing the

---

[9] State Rec., Vol. II of IV, transcript of April 20, 2000, p. 59.

reliability of a pre-trial identification.  These factors include:

> (1) the opportunity of the witness to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, (5) the elapsed time between the crime and the identification, and, (6) the corrupting influence of the suggestive identification itself.

*Herrera,* 904 F.2d at 947.

Although Hoover was shown a single photograph of petitioner at the time of his identification, as opposed to an array of photos, he positively identified defendant as the individual who sold him cocaine.  As the magistrate judge concluded, even if the court finds that the single photograph was impermissibly suggestive, Detective Hoover's identification of petitioner still possesses sufficient aspects of reliability.  For example, Detective Hoover had an excellent opportunity to view the perpetrator as his upper torso was inside the car in which the perpetrator was sitting thus enabling him to look at the perpetrator's face at a close range in a well lit area. Moreover, Detective Hoover is a well trained police officer, who could be expected to "pay scrupulous attention to detail" especially because he knew it was highly likely he would have to testify as to the identification of the individual.  *See Manson,* 432 U.S. at 115.  In addition, the amount of time which elapsed

between the transaction and Detective Hoover's positive identification of defendant based on his driver's license photo was only an hour.[10]   Furthermore, Detective Hoover stated his level of certainty was 100 percent.[11]   The evidence also showed that the perpetrator identified himself as "Alonzo" and the drug buy took place from an automobile previously linked to petitioner.[12]   An examination of the evidence therefore demonstrates that any suggestiveness in the procedures employed in obtaining Hoover's identification of petitioner was outweighed by the reliability of his identification.

Thus, as the magistrate judge correctly found, petitioner has failed to demonstrate that the state court's decision rejecting his insufficiency of evidence claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254.   The Court finds that Hoover's identification of petitioner meets the Supreme Court's sufficiency of the evidence standard.

---

[10] *State v. Ambo*, No. 2001-KA-0756, at p. 2 (La. 1st Cir. May 10, 2002)(unpublished); State Rec., Vol. IV of IV.

[11] State Rec., Vol. II of IV, transcript of April 20, 2000, p. 59.

[12] State Rec., Vol. II of IV, transcript of April 20, 2000, pp. 130-31.

### 2.   *Habitual Offender Adjudication*

Petitioner contests the state's evidence in the habitual offender proceedings.  In his Report and Recommendation, the magistrate judge *sua sponte* raised a procedural default to bar petitioner's habitual offender adjudication claim.  The Fifth Circuit has stated that "[a] district court may, in its discretion, raise the affirmative defense of procedural default in habeas proceedings *sua sponte*."  *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006) (citing *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)).  Before doing so, however, the district court should consider "(1) whether the petitioner had notice that the district court was going to raise the defense *sua sponte* and had an opportunity to respond, and (2) 'whether the state's failure to raise the defense is merely inadvertence or the result of a purposeful decision to forgo the defense.'"  Id. (quoting *Magouirk*, 144 F.3d at 360).  Having considered these factors, the Court finds it appropriate to raise *sua sponte* the procedural default defense in this instance.  First, petitioner was undoubtedly put on notice that this Court may raise the procedural default through the magistrate judge's Report and Recommendation and he in fact filed a response in which he specifically objected to the procedural default defense.  *See id.*

10

at 519 ("Unlike *Magouirk* and *Willis*, in this case there was no magistrate judge's report and recommendation to the district judge alerting the parties that procedural default would be at issue.").  Second, as the magistrate judge correctly observed, the state's failure to raise the defense is clearly inadvertent rather than a purposeful decision to forgo the defense; in its response, it does not expressly waive the procedural default.

As to the merits of the procedural default issue, the Fifth Circuit has stated:

> A claim that a state has withheld a federal right from a
> person in its custody may not be reviewed by a federal
> court if the last state court to consider that claim
> expressly relied on a state ground for a denial of relief
> that is both independent of the merits of the federal
> claim and an adequate basis for the court's decision.  To
> satisfy the "independent" and "adequate" requirements, the
> dismissal must "clearly and expressly" indicate that it
> rests on state grounds which bar relief, and the bar must
> be strictly or regularly followed by state courts, and
> applied to the majority of similar claims.  This rule
> applies to state court judgment on both substantive and
> procedural grounds.

*Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).  Thus, in order for a federal court to determine whether the state court denied relief based on an adequate and independent state procedural rule, the court must look to the last state court decision to see whether it applied a procedural bar or addressed the claim on the merits.  See *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Here, the last state court to consider petitioner's

habitual offender adjudication claim was the Louisiana First

Circuit Court of Appeal.  It rejected his claim, finding:

> The trial court did not err in denying relator's
> application for post conviction relief.  An attack on
> predicate convictions supporting a habitual offender
> adjudication should be raised on appeal.  A defect in
> habitual offender proceedings does not constitute
> grounds for post conviction relief under La. Code Crim.
> P. art. 930.3.  *See State ex re. Melinie v. State*, 665
> So. 2d 1172.

*State ex rel. Ambo v. State*, No. 2004-KW-0845 (La. Ct. App. Sept.

7, 2004) (unpublished).  The Louisiana Supreme Court then

rejected the related writ application without assigning reasons.[13]

The state court cited La. Code Crim. Pro. art. 930.3, which sets

forth the grounds on which post-conviction relief may be sought,

and the *Melinie* decision, which held that claims involving

sentencing errors may not be asserted in post-conviction

proceedings.[14]

     A federal habeas court will not consider the merits of a

_____

     [13] *State ex rel. Ambo v. State*, 904 So.2d 739 (La. 2005);
State Rec., Vol. IV of IV.  "Where there has been one reasoned
state judgment rejecting a federal claim, later unexplained
orders upholding that judgment or rejecting the same claim are
presumed to rest upon the same ground." *Finley*, 243 F.3d at 218.

     [14] In *Melinie*, the Louisiana Supreme Court stated "La. Code
Crim. Proc. art. 930.3, which sets out the exclusive grounds for
granting post-conviction relief, provides no basis for review of
claims of excessiveness or other sentencing error post-
conviction."  *State ex rel. Melinie v. State*, 665 So.2d 1172 (La.
1996).

federal claim when the state courts denied the claim on the basis of a state procedural rule that is adequate to support the decision and independent of the merits of the claim.  *See, e.g.*, *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (noting that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds").  To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims.  *See Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999).  In Louisiana, it is well-established that Article 930.3 and the *Melinie* decision constitute independent and adequate grounds to support the application of a procedural bar.  *See, e.g.*, *Hull v. Stadler*, 2000 WL 1598016 (5th Cir. Sept. 28, 2000); *Madina v. Cain*, 2006 WL 2726506, at *3 (E.D. La. Sept. 20, 2006); *Johnson v. Andrews*, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006).

A petitioner can overcome a procedural default only by showing either cause for the default and actual prejudice or that the application of the state procedural bar would result in a fundamental miscarriage of justice.  *See Pickney v. Cain,* 337 F.3d 542, 545 (5th Cir. 2003) (quoting *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).  In order for petitioner to establish cause for the procedural default, he must show some objective factor that impeded his defense counsel's effort to comply with

13

the state procedural rule. *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000) (quoting *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1999). Furthermore, "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed him." *Johnson v. Puckett*, 176 F.3d 809. Objective factors that constitute the cause element include "interference by officials, "a showing that the factual or legal basis for a claim was not reasonably available to counsel" and "ineffective assistance of counsel." *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992) (quoting *Murray v. Carrier*, 477 U.S. 478 (1986)). However, the "mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986).

Petitioner claims that ineffective assistance of appellate counsel should be found to support the cause prong. In *Strickland v. Washington*, the Supreme Court held that in order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsels's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 697 (1984). To establish deficient performance, petitioner must show that

counsel's performance fell below an objective standard of reasonableness. *See id.* at 687-96.  Thus, petitioner must demonstrate that counsel's conduct fails to meet the constitutionally required minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  To establish that the deficient performance prejudiced his defense he must show that but for counsel's deficient performance, the likely outcome of the proceeding would have been different. *See Strickland,* 466 U.S. at 687-96.  Petitioner is required to meet both elements of the *Strickland* test and, if the court finds that petitioner has made an insufficient showing as to either element, the court may dispose of the claim without addressing the other element. *See id.* at 697.

Here, petitioner offers no evidence demonstrating his appellate counsel fell below an objective standard of reasonableness in failing to raise the habitual offender claim on direct appeal.  Further, the Multiple Offender Bill of Information sets forth that petitioner was previously convicted in the 22nd Judicial District Court of St. Tammany Parish, Louisiana for the crime of illegal possession of stolen things in a felony amount.  In addition, he had previously pled guilty to possession of cocaine with the intent to distribute in the

Circuit Court of Hancock County, Mississippi.[15]  Thus, petitioner was properly sentenced in conformity with the provisions of La. Rev. Stat. § 15:529.1.[16]  Therefore, even if petitioner could establish cause arising from his counsel's asserted ineffective assistance, he has failed to establish that he suffered any prejudice.  Petitioner therefore cannot show ineffective assistance of counsel in this instance.

Petitioner likewise has failed to demonstrate that the application of Louisiana's procedural rule would result in a fundamental miscarriage of justice.  In order for petitioner to establish a fundamental miscarriage of justice, petitioner must show that he is actually innocent, *i.e.*, make a "colorable showing of innocence." *Kuhlman v. Wilson*, 477 U.S. 436, 454 (1986).  As the magistrate judge stated, it is unclear, however, to what extent a "colorable showing of innocence" is available when the barred claims relate merely to an alleged sentencing error in a noncapital proceeding.  *Id*.  Nevertheless, as discussed above, petitioner has failed to demonstrate he was legally ineligible for the habitual offender sentence he

---

[15] State Rec., Vol. I of IV, Multiple Offender Bill of Information, p. 89.

[16] State Rec., Vol. I of IV, Multiple Offender Bill of Information, p. 89.

received.  Thus, assuming *arguendo* that the "actual innocence" exception is applicable in some manner to noncapital sentencing errors, Ambo has not shown that a miscarriage of justice will result from the application of the state procedural bar. Therefore, as the magistrate judge correctly found, petitioner's claims challenging the habitual offender proceedings are procedurally barred in this federal proceeding and his objections are without merit.

> 3.  *Questioning of the Juror*

Petitioner claims the trial judge improperly questioned a juror outside of the presence of petitioner and counsel.  The Louisiana First Court of Appeal rejected that claim.  On direct appeal, it found:

> In this assignment of error, defendant contends that the trial court's communication with a juror who has been selected on the first day of trial constituted reversible error.  On the second morning of trial, the trial judge informed counsel that prior to the beginning of court that morning one of the jurors approached him and told him that she had realized that defendant's trial counsel represented her brother in a DWI case.  The court indicated that it had asked the juror if that would affect her ability to be fair and impartial and that she has said no. The state then indicated that had it known this information during voir dire it would have exercised a peremptory challenge as to that juror.  The trial court offered to have the juror brought into court, to which defense counsel stated that he thought that was unnecessary in light of the juror's response to the trial court that she could be fair.

17

The prosecutor argued that in light of the new information, it would prefer to exercise a peremptory challenge of that juror.  Because the jury had not yet been sworn, the trial court allowed the challenge.

Defendant cites *State v. Wicken*, for the proposition that the trial court's actions in this case constitute reversible error.  However, the facts of the instant case are distinguishable from *Wicken* in several respects.  In that case, after the jury was picked but before opening statements, defense counsel asked the trial court to remove a juror who had been overheard stating that "if she lost a hundred dollars today from her employment, there would be no fair trial."  The trial court denied defendant's request to remove the juror stating that the court had already talked to the juror and felt that she had been sufficiently calmed down and would make a good juror.  The court in that case held that the trial court committed reversible error in conversing with the juror to determine whether she would make a fair and impartial juror.

In the instant case, the juror approached the trial court in the morning, prior to the beginning of court, to give it the information that her brother had been represented by defendant's attorney.  Although the trial court asked her if that would affect her ability to be fair and impartial, it appears from the record that, unlike Wicken, the trial court's contact with the juror was relatively brief and was initiated by the juror, not the judge.  It is further noted that the trial court immediately brought the matter to the attention of counsel and offered them the opportunity to question the juror, which defense counsel declined.

Under the circumstances presented here, we find no reversible error in the trial court's actions.  Therefore, the assignment is without merit.

*State v. Ambo*, No. 2001-KA-0756, at 6-7 (La. Ct. App. May 10, 2002) (unpublished).  The magistrate judge found that petitioner

could not show that any prejudice resulted from the trial judge's ex parte communication with the juror because the juror was ultimately excused through a peremptory challenge.  Thus, to the extent the trial judge may have erred, the magistrate judge found that such error was harmless.  *See Rushen v. Spain*, 464 U.S. 114, 119 (1983) (holding that ex parte communications between trial judge and juror that constitute harmless error do not require reversal of conviction).  The Court agrees with the magistrate judge's decision.

Although petitioner did submit objections to the magistrate's Report and Recommendations, his objections merely reiterate his earlier arguments and therefore do not warrant further consideration by the Court.  Accordingly, petitioner's questioning of the juror claim is without merit.

4.  *Exclusion of Evidence*

Petitioner claims that the trial judge improperly refused to allow the introduction of exculpatory evidence, namely an invitation to a nightclub party held on the same night that the offense was committed.  On direct appeal, the Louisiana First Circuit Court of Appeal dismissed the claim, stating:

> In this assignment of error, defendant contends that the trial court erred in sustaining the state's hearsay objection to a document defendant attempted to introduce in connection with his alibi defense.

The instant offense was alleged to have been committed on June 30, 1998, when defendant sold drugs to an undercover narcotics officer.  Defendant offered an alibi defense.  Defendant presented testimony of friends and family that on the night in question, he was attending a party at a nightclub called the Sand Pit.

Defendant attempted to introduce a purported invitation to an anniversary party for the club through his uncle, Isaiah Ambo, Sr., who said he had received the invitation in the mail.  The state objected to introduction of the document on the basis of hearsay, stating that it should not be allowed unless defendant could bring in the person who prepared the document to authenticate it.  The trial court agreed, stating "Somebody could have done this last night on a computer . . . .  You should have had the guy who did this come and testify."

The invitation was being offered for its truth, i.e. that there had been an anniversary party at the Sand Pit club on the night of June 30, 1998.  Therefore, the document constituted hearsay evidence. La. C.E. art. 801(C).  While hearsay should generally be excluded, if it is reliable and trustworthy and its exclusion would interfere with the defendant's constitutional right to present a defense, it should be admitted.  In the instant case, the trial judge pointed out that the document defendant was attempting to introduce was not reliable and trustworthy, as it appeared to be something that could easily have been generated by anyone on a computer.  The trial court indicated that in order for the document to be admissible, someone from the Sand Pit needed to be present in court to verify that the document was produced by the club and sent to its patrons.  On cross-examination of defendant's uncle, the prosecutor questioned whether the owner was a friend of his.  The uncle responded in the affirmative.  Therefore, it is apparent that defendant could have easily had the owner of the club come in to testify to the authenticity of the document in question.

> It is further noted that on direct examination, Ambo
> was allowed to testify that he had received the
> invitation, that it was dated June 30, 1998, and that
> he had brought the invitation with him to court.
>
> Under the circumstances presented here, the trial
> court did not err in excluding the evidence and this
> assignment of error is without merit.

*State v. Ambo*, No. 2001-KA-0756, at 7-8 (La. Ct. App. May 10, 2002)(unpublished).

When a habeas petitioner claims erroneous admission of evidence at trial, a federal court's role is limited to determining whether the error is so extreme that it constitutes denial of fundamental fairness under the due process clause. *See Lucas v. Johnson,* 132 F.3d 1069, 1081-82 (5th Cir. 1998). Habeas relief is warranted only when erroneous admission played a "crucial, critical and highly significant role in the trial." *Id.* at 1082. As the magistrate judge correctly found, petitioner failed to demonstrate that the state court's ruling that the invitation violated the hearsay rule was incorrect. Furthermore, in light of the evidence that Ambo did put forth at trial as to the existence of the party at the Sand Pit, the magistrate judge properly concluded that the introduction of the invitation would merely have been cumulative and, more significantly, would in no way have established that petitioner was actually at the Sand Pit that night. Thus, given the considerable evidence of petitioner's guilt, the Court finds that the evidentiary ruling

21

did not play a "crucial, critical, and highly significant role in the trial." *Id.* Accordingly, this claim is dismissed.


        5.   *Prosecution's Reference to Petitioner's Failure to Testify*

Petitioner asserts that the trial judge improperly allowed the prosecution to call attention to his failure to testify at trial. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding in pertinent part:

> After several defense witnesses testified that defendant had gold teeth for a number of years, the following took place:
>
> BY [DEFENSE COUNSEL]:
> Your Honor, at this time we would call Alonzo Ambo for purposes discussed at the bench.
>
> BY [PROSECUTOR]:
> I didn't understand.  Who are you calling?
>
> BY [DEFENSE COUNSEL]:
> Alonzo Ambo.  I'm calling him pursuant to discussion [sic] that we had.
>
> BY THE COURT:
> Demonstration Purposes.
>
> BY [DEFENSE COUNSEL]:
> This is demonstration purposes only.
>
> BY {PROSECUTOR]:
> Your Honor, can we approach the bench.
>
> At this point, a bench conference was apparently held, but the record does not contain a transcription

22

of that conference.  After the bench conference, defendant, at the direction of defense counsel, stood before the jury and read at length an advertisement for Westlaw.  At one point during this recitation, defense counsel directed defendant to get close to the jury and read in a loud voice.  Afterwards, he told defendant to turn to the jurors and recite his ABC's.  Defense counsel then thanked defendant.  The prosecutor then asked the court whether he was permitted to ask questions and was told, "I don't believe.  This is strictly for demonstration."  The prosecutor asked the court to explain that to the jury, at which point the court said:

> Right. Mr. Ambo was not here as a witness.
> This was strictly demonstration which was
> requested by his attorney.  So since he's
> not a witness, Mr. Dearing cannot ask him
> any questions.

After this exchange, when the jury was excused for a break, defense counsel asked for a mistrial based on the prosecutor's question about whether he could ask questions of the witness, claiming that it was a comment on defendant's failure to testify.  The court said, "I don't think he made a comment on him not testifying.  I think I explained to the jury what was going on."  The prosecutor indicated that the reason he wanted the court to instruct the jury regarding the demonstration was so that the jury was not left with the impression that the prosecutor had chosen not [sic] to ask defendant any questions.  The trial court did not interpret the prosecutor's remarks as a comment on defendant's failure to testify and denied the motion for a mistrial.

Louisiana Code of Criminal Procedure Article 770(3) provides that the trial court "shall" declare a mistrial when the prosecutor "refers directly or indirectly to . . . [t]he failure of the defendant to testify in his own defense . . . ."  The prohibition against such prosecutorial comments safeguards the defendant from unfavorable inferences that might otherwise be drawn from his silence.  The rule helps implement a defendant's Fifth Amendment right against

23

self-incrimination and is constitutionally required.

When the prosecutor makes a direct reference to the
defendant's failure to take the stand, a mistrial
should be declared, and "it is irrelevant whether the
prosecutor intended the jury to draw unfavorable
inferences from defendant's silence."  Where the
reference to the defendant's failure to take the
stand is not direct, this court will inquire into the
remark's "intended effect on the jury" in order to
distinguish indirect references to the defendant's
failure to testify (which are impermissible) from
general statements that the prosecutor's case is
unrebutted (which are permissible).

The instant case presents a highly unusual situation
in which the defendant, who had already demonstrated
that he had gold teeth, was again permitted to stand
before the jury and read a fairly extensive amount of
material, and then recite his ABC's for the apparent
purpose of showing that those teeth were visible when
he spoke.  Contrary to defendant's argument, it was
clear that the prosecutor was initially confused when
defense counsel indicated that it was calling the
defendant for purposes discussed at the bench because
he asked to approach the bench.  Since the bench
conference was not transcribed, the prosecutor's
understanding of the manner in which demonstration
would proceed cannot be determined.  The trial court
made clear that it thought the prosecutor's question
was asked merely for purposes of clarifying for the
jury what was happening.  The court gave this
interpretation prior to hearing the prosecutor's
explanation.  Given the fact that defendant had
already physically demonstrated that he had gold
teeth when he was asked by defense counsel to smile
for the jury, it is possible that some of the jurors
might have been confused by his being again called
during the defense's presentation of evidence.  In
any case, it is clear that the trial court did not
interpret the remark as a comment on defendant's
failure to take the stand.  Further, even if the
prosecutor's questions could be interpreted as
referring to defendant's failure to take the stand,
any such reference was indirect.  As such, in light

24

> of the fact that the trial court believed the remarks
> were made for purposes of clarifying for the jury
> what had occurred and not calling attention to
> defendant's failure to testify, a mistrial was not
> warranted.  In light of the foregoing, the trial
> court's ruling was proper, and this assignment of
> error is without merit.

*State v. Ambo*, No. 2001-KA-0756, at 3-6 (La. Ct. App. May 10,
2002) (unpublished).

The Fifth Circuit has stated that the "Fifth Amendment
prohibits a prosecutor from commenting on a defendant's failure
to testify." *Cotton v. Cockrell*, 343 F.3d 746, 751 (5th Cir.
2003) (citing *Griffin v. California*, 380 U.S. 609 (1965)).
Furthermore, in order for petitioner to establish that his Fifth
Amendment rights were violated, he must show that "the
prosecutor's manifest intent in making the remark must have been
to comment on the defendant's silence, or the character of the
remark must have been such that the jury would naturally and
necessarily construe it as a comment on the defendant's silence."
*Id.* (quoting *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir.
1999)).  However, "the prosecutor's intent is not manifest if
there is some other, equally plausible explanation for the
remark." *Id.* (quoting *United States v. Grosz*, 76 F.3d 1318, 1326
(5th Cir. 1996)).  Thus, when considering whether the jury would
necessarily view the remark as a comment on the defendant's
failure to testify, "the question is not whether the jury

25

possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." *Id.*

The prosecutor's remarks here do not meet this standard. As the magistrate judge correctly found, petitioner has not established that the prosecutor possessed the requisite intent. Furthermore, the fact that the prosecutor wanted to clarify for the jury why the defendant was reading the Westlaw advertisement and why he was not questioning him was a "plausible explanation" for his remark. Thus, the jury would not "necessarily" view the prosecutor's comment as a comment on the defendant's failure to testify. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

    6.   *Ineffective Assistance of Counsel*

Petitioner contends his counsel was ineffective. As discussed earlier, in *Strickland v. Washington*, the Supreme Court held that in order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsels's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland,* 466 U.S. at 697. Petitioner is required to meet both elements of the *Strickland* test and, if the court finds that petitioner has made an insufficient showing as to either element, the court may dispose

of the claim without addressing the other element.  See *id.* at
697.

Specifically, petitioner alleges that his counsel
improperly: (1) prohibited him from testifying at trial; (2)
failed to produce "affirmative evidence" during the habitual
offender proceedings to support the contention that the predicate
conviction from Mississippi was invalid; and (3) failed to
challenge the habitual offender adjudication on appeal.  The
Court addresses each of these allegations in turn.

a.   *Failure to Call Defendant to Testify*

When a defendant claims that his counsel prohibited him
from exercising his constitutional right to testify at trial,
"[t]he appropriate vehicle for such claims is a claim of
ineffective assistance of counsel" under *Strickland.  See Sayre
v. Anderson,* 238 F.3d 631, 634 (5th Cir. 2001).  In determining
whether counsel's performance was deficient, the Court must be
highly deferential to counsel's trial strategy.  *Id.* at 635.
Under the *Strickland* analysis, "the decision whether to put a
defendant on the stand is a 'judgment call' which should not
easily be condemned with the benefit of hindsight." *United
States v. Mullins,* 315 F.3d 449, 453 (5th Cir. 2002).  As the
magistrate judge correctly found, counsel may have justifiably
been hesitant to have petitioner testify because his testimony

27

may have revealed his criminal history, which included a prior conviction for cocaine distribution.   In any event, petitioner fails to demonstrate that his attorney's strategic decision was unreasonable.   Furthermore, petitioner did not offer any details or allegations that illuminate how the decision for him not to testify was made.   Therefore, he cannot satisfy the first element of the *Strickland* test.   Consequently, the Court need not address the second element of the *Strickland* test.

> b.   *Validity of Mississippi Conviction*

Petitioner claims that trial counsel was ineffective in failing to produce evidence during the habitual offender proceedings to support the contention that the prior conviction from Mississippi was invalid.   However, because petitioner offers no evidence indicating that this conviction is invalid in any way, he cannot show either deficient performance or prejudice under *Strickland*.

> c.   *Failure to Challenge the Habitual Offender*
> *Adjudication*

Finally, petitioner asserts ineffective assistance of counsel based on his attorney's failure to challenge the habitual offender adjudication on appeal.   As discussed above in Section B(2), petitioner has not demonstrated either deficient performance or prejudice and thus does not satisfy the *Strickland*

28

test.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DENIES with prejudice Ambo's petition for a writ of habeas corpus.

New Orleans, Louisiana, this ____ day of July, 2007.
                                  31st

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT